## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNIVERSITY OF SOUTH FLORIDA
RESEARCH FOUNDATION, INC.,

         Plaintiff/Counterclaim Defendant,

vs.

FUJIFILM MEDICAL SYSTEMS U.S.A.,
INC.,

         Defendant/Counterclaimant.

_____/

Case No. 8:16-cv-01194-MSS-TGW

**Case Dispositive Motion**

## DEFENDANT/COUNTERCLAIMANT FUJIFILM MEDICAL
## SYSTEMS U.S.A., INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

      Pursuant to Federal Rule of Civil Procedure 12(c), Defendant/Counterclaimant

FUJIFILM Medical Systems U.S.A., Inc. ("Fujifilm") hereby moves for judgment on the

pleadings as more fully set forth in the following Memorandum of Legal Authority.

## MEMORANDUM OF LEGAL AUTHORITY

## I.     INTRODUCTION

      This is a patent infringement case.  On May 12, 2016, Plaintiff/Counterclaim

Defendant University of South Florida Research Foundation ("USFRF") filed a Complaint

alleging that Fujifilm infringed the claims of U.S. Patent No. 6,630,937 ("the '937 patent"),

relating to a workstation-user interface for evaluating computer assisted diagnosis methods

for digital mammography.  The present motion addresses a narrow question of law related to

the patent's use of means-plus-function claiming which is both case dispositive and

appropriate for resolution at the outset of this case.

Means-plus-function claiming permits a patentee to express an element of a claim as a means for performing a specified function. 35 U.S.C § 112, ¶ 6 (2006).[1] When the U.S. Patent and Trademark Office ("PTO") allowed the '937 patent in 2003, it was without the benefit of the large body of Federal Circuit case law that has since clarified the requirements of functional claiming under section 112, paragraph 6. "In exchange for using this form of claiming, the patent specification must disclose with sufficient particularity the corresponding structure for performing the claimed function and clearly link that structure to the function." *Triton Tech. of Tex., LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1378 (Fed. Cir. 2014). With respect to functions performed by a computer, the structure disclosed in the specification must be a computer programmed to execute a particular algorithm, not merely a general purpose computer or microprocessor. The failure to disclose sufficient corresponding structure or to link that structure to the claimed function renders a claim indefinite.

Measured against the standard set by the Federal Circuit for means-plus-function claiming, the claims of the '937 patent are indefinite. Indeed, the specification of the '937 patent does not disclose ***any corresponding structure***, much less any structure that is clearly linked to the functions recited in the claims. While the specification discloses a general purpose computer – an UltraSPARC 2200 – there is no disclosure, at even a high level, of how this computer carries out the claimed functions. As a result, each claim of the '937 patent is invalid as indefinite. Because invalid claims cannot be infringed, judgment on the

---

[1] Citations to 35 U.S.C. § 112 refer to the pre-AIA version of the Code. *See* America Invents Act, P.L. 112-29 (Sept. 16, 2011) at § 4(e) (amendments to 35 U.S.C. § 112 take effect and apply to applications filed on or after September 16, 2012).

pleadings in favor of Fujifilm is warranted.  This legal issue can be decided with limited claim construction based solely on the face of the '937 patent, and doing so at this early stage of the case will obviate further expenditure of public and private resources litigating an invalid patent.

## II.     STATEMENT OF THE PERTINENT FACTS

On May 12, 2016, USFRF filed a Complaint alleging that Fujifilm infringes all claims of the '937 patent.  The '937 patent includes 17 claims, four of which are independent.  These independent claims are reproduced below, with emphasis added for the means-plus-function elements that are the focus of this motion.

### Claim 1

A system for providing an interface between a digitized mammogram and a user comprising:

a processor having means for electronically communicating with:

means for communicating with a user;

a monitor for displaying image data in a predetermined format and in varying greyscale, the monitor having a predetermined illumination capability; and

means for receiving digitized mammogram data corresponding to a film mammogram image, the digitized mammogram data having greyscale values corresponding to optical densities of the film mammogram image; and

***electronically implementable means*** resident in the processor comprising:

***means for transforming*** the digitized mammogram data into a plurality of varying-resolution forms, each form having different greyscale values;

***means for communicating*** with a monitor to display the plurality of forms, each form within a different window on the monitor, and each form having a predetermined illumination state corresponding to the

greyscale values thereof; and

*means for receiving* from the user communication means a control instruction for changing an illumination state in a displayed form *and for implementing* the control instruction upon the displayed form, thereby permitting the user to control the illumination state of each displayed form.

**Claim 2**

A system for interfacing a digitized mammogram to a user comprising:

a. a monitor capable of displaying image data in a predetermined format, and in varying grayscale colors, said monitor having a predetermined illumination capability;

b. an electronic storage medium with digitized mammogram image data, said digitized mammogram image data corresponding to a film mammogram image and the digitized mammogram image data having grayscale values corresponding to the optical densities of the film mammogram image;

c. *a processor* in circuit communication with said monitor and said electronic storage medium; and

d. *an input device* in circuit communication with said processor;

said *processor* being adapted to receive input signals from said *input device*, and being responsive to a signal from said *input device* to transfer digitized image data from said electronic storage medium to said monitor in a way that causes the monitor to produce a display having a plurality of windows and to display a mammogram image in a different form in each window with grayscale values that, along with the illumination characteristics of said monitor, appears to a user as a mammogram in each window under a predetermined illumination state, thereby interfacing said mammogram image in each window and in a predetermined illumination state to an operator handling said input device;

said *processor* being adapted to receive further input from said *input device* related to the mammogram image in a selected window, said further input from said *input device* including input that selectively controls the grayscale values of the mammogram image in the selected window, thereby enabling an operator handling said *input device* to selectively control the illumination state with which the mammogram image in the selected window is displayed to the operator.

**<u>Claim 3</u>**

A system for providing an interface between a medical image and a user comprising:

means for establishing electronic communications with a processor for receiving a stored digitized medical image comprising data representative of a plurality of greyscale values;

means for communicating with a display means; and

***software means*** loadable into the processor comprising:

>   ***means for receiving*** a signal from a user-operable device;
>
>   ***means*** controllable by a signal from the user-operable device ***for transforming*** the image into a plurality of varying-resolution forms, each form having a different set of greyscale values; and
>
>   ***means for displaying*** the forms on the display means, each form displayed within a different sector of the display means.

**<u>Claim 17</u>**

A system for analyzing a set of digitized mammography images, the set comprising a plurality of views from a unitary patient, the system comprising:

a first and a second display monitor;

a processor having means for communicating with an image storage device and ***software means*** resident thereon, the ***software means*** comprising:

>   ***means for receiving*** a signal from a user-operable device;
>
>   ***means*** controllable by a signal from the user-operable device ***for transforming*** the image into a plurality of varying-resolution forms, each form having a different set of greyscale values; and
>
>   ***means for displaying*** a first form on the first monitor and a second form on the second monitor.

## III.   LEGAL STANDARD

Judgment on the pleadings under Fed. R. Civ. P. 12(c) is proper when "no issues of

material fact exist, and the moving party is entitled to judgment as a matter of law based on

the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010).  A motion for judgment on the pleadings is analyzed using the same standards that govern a Rule 12(b)(6) motion to dismiss.  *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002).  Therefore, to survive a motion for judgment on the pleadings, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (*quoting* FED. R. CIV. P. 8(a)(2)).  "[T]he Court must accept the facts alleged in the complaint as true and draw all inferences that favor the nonmovant." *Id.* (citations omitted).

A patent claim must "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2.  If a patent claim fails to inform one of ordinary skill in the art about the scope of the invention with reasonable certainty, it is invalid as indefinite.  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).  Patents are presumed valid.  35 U.S.C. § 284(a).  Thus, invalidity must be shown by clear and convincing evidence.  *Microsoft Corp. v. i4i Ltd. P'Ship*, 564 U.S. 91, 95 (2011).

In lieu of expressing a claim element by reciting structure, an applicant is permitted to express an element as a means for performing a specified function.  35 U.S.C. § 112, ¶ 6.  In exchange, the applicant must indicate in the specification what structure constitutes the means.  *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1363 (Fed. Cir. 2012).  This structure must be "clearly linked or associated with the claimed function." *Id.*  The ability to recite generic means terms in patent claims with the requirement to clearly link

6

structure in the specification to these means is the "quid pro quo" of means-plus-function claiming. *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318 (Fed. Cir. 2012). It is not enough that a person of ordinary skill in the art could implement the claimed function using known structure. *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1337 (Fed. Cir. 2008). Rather, the structure must be set forth in the specification. *Id.*

## IV.   ARGUMENT

### A.   <u>The Invalidity of the '937 Patent Is Ripe for Adjudication</u>

The narrow but dispositive issue raised by this motion is suitable for early adjudication. All relevant inquiries are issues of law; there is no issue on which a finding of fact is required. Specifically, the legal issues for the Court to resolve are: (i) whether the claim terms addressed in this motion are subject to 35 U.S.C. § 112, ¶ 6, (ii) if so, what are the claimed functions, and (iii) whether the corresponding structure for each function is disclosed in the specification. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1346 (Fed. Cir. 2015); *see also Driessen v. Sony Music Entm't*, No. 2:09-cv-140, 2015 WL 1057845, at *3 (D. Utah Mar. 10, 2015).

No evidence is necessary beyond the patent in suit, which is attached to USFRF's Amended Complaint for Patent Infringement ("the Amended Complaint"). *See* Dkt. No. 23-1.[2] Indeed, the invalidity of the claims of the '937 patent is confirmed upon consideration of only the claims of the '937 patent and the specification. As explained in the succeeding sections, by way of a straightforward analysis under 35 U.S.C. § 112, ¶ 6 and applicable case

---

[2]   To the extent that the Court deems it necessary to consider any papers beyond USFRF's Amended Complaint and the exhibits thereto, this motion may be converted into a motion for summary judgment. FED. R. CIV. P. 12(d).

law, all claims of the '937 patent are invalid as indefinite.  Therefore, Fujifilm respectfully requests that the Court consider the present motion at the outset of this case and prior to the expenditure of further resources by the Court and the parties.

The mere fact that the present motion calls upon the Court to engage in limited claim construction is not a basis to delay consideration of the motion.  Although the Court's Case Management and Scheduling Order (Dkt. No. 30) establishes dates for a formal claim construction process later in this litigation, district courts routinely engage in claim construction outside of the formal claim construction process.  *See F & G Research, Inc. v. Google Inc.*, No. 06-60905-CIV, 2007 WL 2774031 (S.D. Fla. Sept. 21, 2007) ("[Plaintiff's] position that the Court must conduct a claim construction hearing before ruling on a motion for summary judgment is simply a misstatement of patent law.") (citing *Conoco, Inc. v. Energy & Envtl. Int'l*, 460 F.3d 1349, 1359 (Fed. Cir. 2006)).  For example, district courts frequently entertain requests to engage in claim construction for a limited number of terms where determination of the constructions may resolve a claim or defense.  *E.g.*, *FO2GO LLC v. Adobe Sys. Inc.*, Nos. 15-89, 95, 97, 99, 100, 101, 2016 WL 747977 (D. Del. Feb. 24, 2016) (permitting a limited early claim construction hearing to resolve the meaning of one term, and finding the term is an indefinite means-plus-function term); *Driessen*, 2015 WL 1057845 (entertaining focused claim construction on terms relevant to defendants motions for summary judgment based on indefiniteness and lack of written description); *Iris Connex, LLC v. Acer America Corp.*, No. 2:15-cv-1909, 2016 WL 4596043 (E.D. Tex. Sept. 2, 2016) (converting motions to dismiss under Fed. R. Civ. P. 12(b)(6) into motions for summary judgment and conducting an early, targeted claim construction of disputed claim phrase

relevant to the motions).  In this case, Fujifilm requests only a targeted, early claim construction of certain "means-plus-function" claim terms.  Given the absence of any corresponding structure for the claimed functions of the '937 patent, this analysis should not be delayed until a formal claim construction of all disputed claim terms.

### B. All Claim Terms Include Means-Plus-Function Elements for Which There Is No Corresponding Structure

As described in more detail below, each claim of the '937 patent includes multiple "means-plus-function" elements for which no corresponding structure is disclosed in the specification.  Each of these elements, independently, renders the claim(s) in which they appear indefinite.  In an effort to streamline this motion, only certain means-plus-function elements are addressed in this motion.

### 1. Claim 1

Claim 1 includes multiple means-plus-function elements, in particular three "electronically implementable means" elements.  The '937 patent specification fails to provide any structure that performs the functions called for by the elements, much less structure that is clearly linked to the functions.  Accordingly, claim 1 is invalid.

#### a. Claim 1 includes means-plus-function elements

Claim 1 requires, among other things, a processor and electronically implementable means resident in the processor.  This electronically implementable means must have three elements:

- means for transforming the digitized mammogram data into a plurality of varying-resolution forms, each form having different greyscale values;

- means for communicating with a monitor to display the plurality of forms, each form within a different window on the monitor, and each form having a

predetermined illumination state corresponding to the greyscale values thereof; and

- means for receiving from the user communication means a control instruction for changing an illumination state in a displayed form and for implementing the control instruction upon the displayed form.

Each of these terms is subject to 35 U.S.C. § 112, ¶ 6.  A claim term that explicitly includes the word "means" and recites a function is presumed to invoke Section 112, ¶ 6. *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1366 (Fed. Cir. 2008).  This presumption is overcome "if the claim itself recites sufficient structure to perform the claimed function." *Id.* (*quoting Envirco Corp. v. Clestra Cleanroom, Inc.*, 209 F.3d 1360, 1364 (Fed. Cir. 2000)).  In this case, each of the above-identified terms in claim 1 includes the word "means" followed by a function.  Accordingly, the presumption applies for these terms.  Further, this presumption is not rebutted.  None of the claim elements include any structure, much less sufficient structure, for carrying out the claimed function.  Accordingly, Section 112, ¶ 6 applies for these terms.

      b.    <u>The '937 Patent does not include structure that corresponds to the means-plus-function elements of claim 1</u>

Having established that the electronically implementable means terms are subject to Section 112, ¶ 6, their scope is indefinite because the '937 patent specification fails to disclose any structure that corresponds to any of the functions recited in these terms.  A means-plus-function claim "shall be construed to cover the corresponding [to the function specified in the claim] structure, material, or acts described in the specification and equivalents thereof."  35 U.S.C. § 112, ¶ 6.  Accordingly, a two-step analysis is employed when construing a means-plus-function term.  First, the claimed function is determined;

second, the corresponding structure disclosed in the specification that performs the function is identified.  *Noah*, 675 F.3d at 1311.  If the court is unable to identify any corresponding structure, the claim term is indefinite.  *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1374 (Fed. Cir. 2015).

In this case, the claimed functions of the electronically implementable means elements are as follows.  First, the "means for transforming" element performs the function of: transforming digitized mammogram data into a plurality of varying-resolution forms, each form having different grayscale values.  Second, the "means for communicating" element performs the function of: communicating with a monitor to display the plurality of forms, each form within a different window on the monitor, and each form having a predetermined illumination state corresponding to the greyscale values of the form.  Third, the "means for receiving . . . and for transforming" element performs the functions of: (1) receiving, from a user communication means, a control instruction for changing an illumination state in a displayed form, and (2) implementing the control instruction upon the displayed form.

The '937 patent specification does not provide corresponding structure for any of these functions.  Structure disclosed in a patent specification is "corresponding structure," within the meaning of 35 U.S.C. § 112, ¶ 6 only if the specification or prosecution history "clearly links or associates that structure to the function recited in the claim."  *Saffran v. Johnson & Johnson*, 712 F.3d 549, 562 (Fed. Cir. 2013); *see also Ergo Licensing*, 673 F.3d at 1363.  Further, where the invention is computer-implemented, the structure disclosed in the specification must be "more than simply a general purpose computer or microprocessor."

*Aristocrat*, 521 F.3d at 1333.  Rather, the structure must be a computer programmed to execute a particular algorithm.  *Id.* at 1334-35.

In this case, there is no corresponding structure, *i.e.*, a computer programmed with a particular algorithm, much less one that is clearly linked to the claimed functions.  At best, the '937 patent discloses a general purpose computer – an UltraSPARC 2200 computer.  '937 patent at col. 3, ll. 45-48.[3]  However, there is no disclosure, at even a high level, of how this computer carries out the functions identified above.  There is no algorithm in any form— mathematical formula, flow chart, computer code, or prose—that provides the step-by-step procedure that the computer follows to perform the functions.  *See Function Media, L.L.C. v. Google Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) (noting that an algorithm may be disclosed in multiple forms); *see also Ex Parte Emigh*, Appeal 2012-5145, 2013 WL 1450915, at *4 (PTAB Mar. 12, 2013) (reciting definition of "algorithm").  The flow chart in Figure 3 does not provide the requisite algorithm.  This chart shows, at most, how an interface may be presented to a user.  '937 patent at col. 2, ll. 48-50.  However, this chart does not disclose any method for performing the claimed functions.

Figure 3 does not show a method of transforming digitized mammogram data into a plurality of varying-resolution forms.  Rather, the chart presumes that this transformation has already been done.  In particular, at the first block of Figure 3—block 301—the case to be selected already contains "4 views," each with a "Preview image," "Original image," and "1-3 CAD images."  How these images were generated from digitized mammogram data is not disclosed.  Similarly, regarding the displaying of the plurality of forms, Figure 3 shows

---

[3]     The '937 patent was filed as Exhibit 1 to Amended Complaint, *i.e.*, at Dkt. No. 23-1.

merely the goal of the claimed function.  For example, viewing Figure 3 charitably in favor of USFRF, block 308 loosely corresponds to the claimed function of communicating with a monitor to display a plurality of forms within different windows.  Block 308 states only that the function of displaying a plurality of forms is to be performed, but it does not explain any step taken to accomplish this.  Thus, the flow chart in Figure 3 is insufficient.  *See Function Media*, 708 F.3d at 1318 (finding that a flow chart that indicates transmission, but does not explain how software performs the transmission function is insufficient support for the claim term "means for transmitting."); *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 518 (Fed. Cir. 2012) (holding that a block in a flow chart that represents the claimed function "is just a black box" and is not sufficient corresponding structure); *Ex Parte Lakkala*, Appeal 2011-1526, 2013 WL 1341108, at *8 (PTAB Mar. 11, 2013) (holding that a flow chart and accompanying description were, at best, "restating the claimed functions without conveying to a skilled artisan how the processor ensures that the functions are performed").

Finally, Figure 3 is silent on the process for both (1) receiving a control instruction for changing an illumination state and (2) implementing this instruction.  Rather, it shows, at most, these same two goals in block 308 ("adjust greyscale").

Each of these failures is fatal to claim 1.  Controlling authority from the Federal Circuit makes clear that the absence of an algorithm corresponding to a claimed computer-implemented function renders the claim indefinite.  The Federal Circuit has had numerous occasions to address this since the '937 patent issued.  During the last fifteen years, it has had to police many patentees attempting to enforce patents directed at computer-implemented functions to be accomplished, and not structure to define the invention.  *See Function Media,*

708 F.3d at 1319; *ePlus*, 700 F.3d at 519.  It has consistently imposed the algorithm

requirement "to prevent purely functional claiming when a patentee employs a special

purpose computer-implemented means-plus-function limitation."  *Noah*, 675 F.3d at 1318.

The clear and repeated guidance from the Federal Circuit notwithstanding, USFRF has not

corrected the '937 patent at the PTO.  *See generally* 35 U.S.C. § 251 (setting forth a reissue

mechanism for patentee's to correct invalid patents).

Moreover, because there is no structure for performing the claimed functions

disclosed in the specification, necessarily there is no such structure that is clearly linked to

the claimed function.  In short, claim 1 represents an attempt to claim functions untied to any

particular structure.  Thus, the '937 patent does not honor its half of the *quid pro quo* of

means-plus-function claiming, and claim 1 is invalid.  *See Noah*, 675 F.3d at 1318.  Claims

13-15, each of which depends from claim 1, are also invalid.  *See* 35 U.S.C. § 112, ¶ 4 ("A

claim in dependent form shall be construed to incorporate by reference all the limitations of

the claim to which it refers.").

### 2.      Claim 3

Claim 3 has the same issues as claim 1.  Although worded slightly differently, the

claimed requirements are similar.  Thus, just as the "electronically implementable means"

elements of claim 1 are indefinite, so too are the "software means" elements of claim 3.

#### a.      Claim 3 includes means-plus-function elements

Claim 3 requires, among other things, software means that are loadable into a

processor and that include the following three elements:

- means for receiving a signal from a user-operable device;

- means controllable by a signal from the user-operable device for transforming the image into a plurality of varying-resolution forms, each form having a different set of greyscale values; and

- means for displaying the forms on the display means, each form displayed within a different sector of the display means.

These three "software means" elements invoke 35 U.S.C. § 112, ¶ 6. Each recites the word "means," and does not recite structure to perform the recited functions. *See Net MoneyIN*, 545 F.3d at 1366 (noting that use of "means" raises a presumption that 35 U.S.C. § 112, ¶ 6 applies, and the presumption is overcome only if the claim recites structure that is sufficient to perform claimed function). Accordingly, claim interpretation under 35 U.S.C. § 112, ¶ 6 applies.

      b.    <u>The '937 Patent does not include structure that corresponds to the means-plus-function elements of claim 3</u>

Each means-plus-function element of claim 3 identified above is indefinite because the '937 patent specification fails to recite structure to perform the functions called for by these elements. Indefiniteness of any one "means" term is fatal to claim 3 and each of its dependent claims.

Proceeding with the two-step analysis of construing these terms, *Noah*, 675 F.3d at 1311, the functions are as follows. The "means for receiving" element performs the function of: receiving a signal from a user-operable device. The "means . . . for transforming" element performs the function of: transforming the image into a plurality of varying-resolution forms, each form having a different set of greyscale values. The "means for displaying" element performs the function of: displaying the forms on the display means, each form displayed within a different sector of the display means. The '937 patent

15

specification does not explain how these functions are to be performed.

Just as there is no structure disclosed in the '937 specification for performing the functions of the "electronically implementable means" elements of claim 1, there is no structure for performing the functions of the "software means" elements of claim 3. The claimed "software means" are computer-implemented; thus, a general purpose computer is insufficient structure. *Aristocrat*, 521 F.3d at 1333. Rather, the corresponding structure must be an algorithm to perform the functions in the preceding paragraph. *See id.* ("[A] computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm.") (*quoting Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005)). In the case of the '937 patent, there is no such algorithm. As a result, there is also no clear linkage between any structure disclosed in the specification and the claimed functions.

As a result, claim 3 and all claims that depend from claim 3, *i.e.*, claims 4-12, and 16, are indefinite. *See* 35 U.S.C. § 112, ¶ 4.

### 3.  Claim 17

The means-plus-function elements of claim 17 closely track those of claims 1 and 3, discussed above. Indeed, two means-plus-function elements of claim 3 reappear, verbatim, in claim 17. For reasons similar to those presented above, claim 17 is invalid as indefinite.

### a.  Claim 17 includes means-plus-function elements

Claim 17 requires, among other things, a processor and software means resident on the processor. The software means includes the following three elements:

- means for receiving a signal from a user-operable device;

16

- means controllable by a signal from the user-operable device for transforming the image into a plurality of varying-resolution forms, each form having a different set of greyscale values; and

- means for displaying a first form on the first monitor and a second form on the second monitor.

These three "software means" elements of invokes 35 U.S.C. § 112, ¶ 6.  The first two elements also appear in claim 3.  As noted above with regards to that claim, these elements recite the word "means," and do not recite structure to perform the recited functions.  *See* section IV.B.2.a.  Similarly, the "means for displaying" element of claim 17 also recites "means" and is without structure so as to rebut the presumption that Section 112, ¶ 6 applies.

        b.      <u>The '937 Patent does not include structure that corresponds to the means-plus-function elements of claim 17</u>

The '937 patent specification fails to recite structure to perform the functions called for by the above-identified means-plus-function elements of claim 17.  These functions are as follows.  The "means for receiving" element performs the function of: receiving a signal from a user-operable device.  The "means . . . for transforming" element performs the function of: transforming the image into a plurality of varying-resolution forms, each form having a different set of greyscale values.  The "means for displaying" element performs the function of: displaying a first form on the first monitor and a second form on the second monitor.

For the reasons set forth above in section IV.B.2.b, the '937 patent specification fails to disclose structure for performing the first two functions.  As for the third, the specification likewise fails to describe how the function of displaying a first form on a first monitor and a

second form on a second monitor is accomplished.  At most, the '937 patent specification

discloses the use of two monitors.  For example, figures 1 and 2 show a system with two

monitors.  However, the specification is silent as to how the system displays two different

forms on these two monitors.  No algorithm, at any level of abstraction, is disclosed.  Thus,

there is no corresponding structure for the function of the "means for displaying" element.

*See Aristocrat*, 521 F.3d at 1333 ("The corresponding structure for a § 112 ¶ 6 claim for a

computer-implemented function is the algorithm disclosed in the specification.").  Moreover,

the '937 patent fails to clearly link any structure disclosed in the specification and the

functions of claim 17 identified above.

For these reasons, each of the three elements identified above renders claim 17

invalid as indefinite.

### 4.    Claim 2

Like the other independent claims discussed above, claim 2 includes means-plus-

function elements.  Again, the specification fails to disclose structure that is clearly linked to

the functions specified by these elements.

#### a.    Claim 2 includes means-plus-function elements

Claim 2, while presented in a slightly different form than the other independent

claims, likewise includes means-plus-function elements.  In particular, claim 2 recites a

"processor" and an "input device," both of which are means-plus-function elements.

As used in claim 2 of the '937 patent, "processor" invokes 35 U.S.C. § 112, ¶ 6.  A

term that does not include "means" may nevertheless invoke 35 U.S.C. § 112, ¶ 6 if "the

claim term fails to 'recite sufficiently definite structure' or else recites 'function without

reciting sufficient structure for performing that function.'" *Williamson*, 792 F.3d at 1349 (*en banc* in relevant part) (*quoting Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). Thus, a presumption that a term that does not include the word "means" is not subject to 35 U.S.C. §112, ¶ 6 is not a strong one. *Id.* In this case, there is no structure associated with the term "processor" either in claim 2 or in the specification. In the context of claim 2, the term "processor" connotes no more structure than would the term "means for processing." Indeed, viewing claim 2 next to the other independent claims reveals their similarities. Claims 1, 3, and 17 recite a processor having electronically implementable (*i.e.*, software) means that perform certain functions. Claim 2 recites a processor "being adapted to" perform similar functions. Of course, placing software on the processor is one way of "adapt[ing]" the processor to perform the claimed functions. Accordingly, there is no appreciable difference between the "processor" of claim 2 and the means-plus-function elements of the other independent claims.

The term "processor," as used in claim 2 of the '937 patent, is akin to similar claim terms that courts and the U.S. Patent and Trademark Office have found invoke 35 U.S.C. § 112, ¶ 6. *See, e.g.*, *VocalTag Ltd. v. Agis Automatisering B.V.*, No. 2015-1804, 2016 WL 4547367, at *2, *3 (Fed. Cir. Sept. 1, 2016) (nonprecedential) ("data processor"); *Personal Audio, LLC v. Apple, Inc.*, No. 9:09CV111, 2011 WL 11757163, at *22 (E.D. Tex. Jan. 31, 2011) ("processor"); *Ex Parte Emigh*, 2013 WL 1450915, at *4 ("a processor configured to"); *Ex Parte Erol*, Appeal 2011-1143, 2013 WL 1341107, at *5 (PTAB Mar. 11, 2013) ("a processor adapted to"); *Ex Parte Lakkala*, 2013 WL 1341108, at *2 ("processor . . . configure . . . to" perform various control functions); *Ex Parte Smith*, Appeal 2012-7631, 2013 WL

1641109, at *1 (PTAB Mar. 12, 2013) ("a processor . . . programmed to . . . generate an opinion timeline for the asset for the user associated with the user identifier").  Indeed, some courts have held that, because reciting a generic "processor" in a specification does not provide adequate structure to support a means-plus-function element in a claim, the same term "cannot describe sufficient structure when recited directly in a claim limitation itself." *See, e.g.*, *Personal Audio*, 2011 WL 11757163, at *21.

District court decisions finding that "processor" or like terms do not invoke Section 112, ¶ 6 are premised on obsolete law or are distinguishable.  For example, many such decisions rely on the since-overturned premise that the absence of the word "means" from a claim phrase results in a "strong" presumption that the term is not subject to Section 112, ¶ 6. *See, e.g.*, *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004) (*overruled by Williamson*, 492 F.3d at 1349).  For example, in *Wi-LAN USA, Inc. v. Alcatel-Lucent USA, Inc.*, No. 12-23568-CIV, 2013 WL 4811233 (S.D. Fla. Sept. 9, 2013), the court repeatedly noted the "strong" presumption that flows from the absence of "means." *Id.* at *8, *39 (*citing Lighting World*).  The *Wi-LAN* court thus found that certain "processor(s)" elements were not means-plus-function elements.  *Id.* at *41.  In *Williamson*, the Federal Circuit eliminated the "strong" presumption standard.  792 F.3d at 1349.  Thus, *Wi-LAN* and similar cases were premised on outmoded law.  Other courts have found that the specification of the patent at issue provided evidence of structure.  *See Advanced Marketing Systems, LLC v. CVS Pharmacy, Inc.*, Nos. 6:15-cv-134, 137, 2016 WL 1741396, at *20 (E.D. Tex. May 3, 2016).  In this case, the '937 patent specification fails to explain how anything that could be construed to correspond to the claimed "processor" performs the

functions called for by the claims.  Thus, *Advanced Marketing* and similar cases are distinguishable.

The term "input device" in claim 2 also invokes 35 U.S.C. § 112, ¶ 6.  Like "processor," this term fails to recite sufficiently definite structure.  Indeed, "device" is a generic term that the Federal Circuit specifically identified as a "nonce" word and that its use in a claim "is tantamount to using the word 'means' because [it] typically do[es] not connote sufficiently definite structure and therefore may invoke § 112, para. 6."  *Williamson*, 792 F.3d at 1350.  Appending the modifier "input" does not add sufficient structure of this element.  Rather, it indicates only that the element interacts with other components of the system by, for example, receiving an input.  *See id.* at 1351.

Accordingly, "processor" and "input device" in claim 2 are means-plus-function terms.

        b.    <u>The '937 Patent does not include structure that corresponds to the means-plus-function elements of claim 2</u>

The '937 patent does not disclose any corresponding structure to the functions called for by these elements.  These functions are as follows.  The "processor" element performs the functions of: (i) transferring digitized image data from an electronic storage medium to a monitor in a way that causes the monitor to produce a display having a plurality of windows and to display a mammogram image in a different form in each window with grayscale values that, along with the illumination characteristics of said monitor, appears to a user as a mammogram in each window under a predetermined illumination state, and (ii) receiving, from an input device, input that selectively controls the grayscale values of a mammogram image in a selected window.  The "input device" element performs the function of:

generating input signals that (i) cause the processor to transfer digitized image data from an electronic storage medium to a monitor in a way that causes the monitor to produce a display having a plurality of windows and to display a mammogram image in a different form in each window with grayscale values that, along with the illumination characteristics of said monitor, appears to a user as a mammogram in each window under a predetermined illumination state, and (ii) selectively control the grayscale values of a mammogram image in a selected window.

The '937 patent specification does not provide corresponding structure for any of the above-identified functions. Indeed, the analysis above with regards to claims 1, 3, and 17 applies here because the functions of the "processor" element align with those of the "electronically implementable means" of claim 1 and "software means" of claims 3 and 17. In particular, the function of transferring digitized image data from an electronic storage medium to a monitor in the required way is analogous to the functions performed by the "means for transforming" and "means for communicating" elements of claim 1 (and the corresponding elements of claims 3 and 7). Specifically, the processor must first transform the image data into a form that the monitor can recognize (as is performed by the "means for transforming" of claim 1) and then it may communicate with the monitor to have the monitor render the desired forms (as is performed by the "means for communicating" element of claim 1). Indeed, as noted above, the juxtaposition of the "processor" elements in claim 2 and the "means" elements of the other independent claims of the '937 patent indicates that the '937 patent uses the terms "processor" and "electronically implementable means"/"software means" interchangeably.

Accordingly, just as the '937 patent specification fails to disclose structure for performing the "electronically implementable means" or "software means" functions of claims 1, 3, and 17, it likewise fails to disclose structure for performing the "processor" functions of claim 2.

The '937 patent also fails to disclose any corresponding structure for the function of generating the particular input signals required by claim 2.  As noted above, structure disclosed in a patent specification must be "clearly linked" to constitute "corresponding structure," within the meaning of 35 U.S.C. § 112, ¶ 6.  *Ergo Licensing*, 673 F.3d at 1363.  In this case, the only structure that could potentially correspond to the function of generating the particular input signals called for by claim 2 is mouse 18.  However, mouse 18 is not ***clearly linked*** to the functions specified in claim 2.  The '937 patent mentions mouse 18 only a few times, disclosing that it may be used to (i) select a case (col. 4, l. 64 – col. 5, l. 2), (ii) pan and jump to certain locations in an image (col. 5, ll. 29-32), or (iii) select an area of interest for further analysis (col. 6, ll. 25-29, 34-36).  There is no disclosure in the specification that mouse 18 generates input signals that (i) cause the processor to transfer digitized image data from an electronic storage medium to a monitor in a way that causes the monitor to produce a display having a plurality of windows and to display a mammogram image in a different form in each window with grayscale values that, along with the illumination characteristics of said monitor, appears to a user as a mammogram in each window under a predetermined illumination state, and (ii) selectively control the grayscale values of a mammogram image in a selected window.  This renders the claim indefinite.  *See In re Aoyama*, 656 F.3d 1293, 1297-98 (Fed. Cir. 2011) (structure that is not clearly linked to the claimed function cannot

provide support for means-plus-function element).

For these reasons, the '937 patent does not inform, to one of skill in the art with reasonable certainty, about the scope of claim 2.  Thus, claim 2 is invalid as indefinite.

### C.        Fujifilm Is Entitled to Judgment on the Pleadings

Fujifilm is entitled to judgment as a matter of law based on USFRF's Amended Complaint and exhibits thereto.  USFRF's theory of liability is premised on alleged infringement of the '937 patent.  Dkt. No. 23 at ¶¶ 15-43.  However, as the Federal Circuit has repeatedly held, "invalid claim[s] cannot give rise to liability for infringement."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009) (*quoting Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983)).  In this case, the pleading papers alone prove the invalidity of the '937 patent.  Accordingly, Fujifilm faces no liability in this case, and judgment should be entered in its favor.  *See Cunningham*, 592 F.3d at 1255 ("Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts.").

## V.        CONCLUSION

For the foregoing reasons, Fujifilm respectfully requests this Court enter an Order granting this motion, declaring the claims of the '937 patent invalid, and entering judgment in favor of Fujifilm.

DATED:  December 1, 2016            *s/Jacob A. Snodgrass*
                                    David W. Marston Jr.
                                    Florida Bar No. 0111636
                                    Morgan Lewis & Bockius LLP
                                    200 South Biscayne Blvd., Suite 5300

Miami, Florida 33131-2339
Telephone:      305.415.3000
Facsimile:      305.415.3001
david.marston@morganlewis.com

Jacob A. Snodgrass (admitted *pro hac vice*)
Jitsuro Morishita (admitted *pro hac vice*)
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone:      202.739.3000
Facsimile:      202.739.3001
jacob.snodgrass@morganlewis.com
jitsuro.morishita@morganlewis.com

*Counsel for Defendant /Counterclaimant*
*FUJIFILM Medical Systems U.S.A., Inc.*

## <u>CERTIFICATE OF ELECTRONIC FILING AND SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on December 1, 2016 via the Court's ECF system.

*s/Jacob A. Snodgrass*
Jacob A. Snodgrass
