### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNIVERSITY OF SOUTH FLORIDA**
**RESEARCH FOUNDATION, INC.**

        **Plaintiff/Counterclaim**
        **Defendant,**

**vs.**                                **Case No. 8:16-cv-01194-MSS-TGW**

**FUJIFILM MEDICAL SYSTEMS USA,**
**INC.**

        **Defendant/Counterclaimant.**
_____/

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff University of South Florida Research Foundation, Inc. ("USFRF") by and through its attorneys, Dickinson Wright PLLC, submits this Memorandum in Opposition to Defendant Fujifilm Medical Systems U.S.A., Inc.'s ("Fujifilm") Motion for Judgment on the Pleadings (Dkt. No. 38, "Motion").

## I.    INTRODUCTION

Since the inception of this litigation, Fujifilm has refused to produce substantive information in response to USFRF's discovery requests, asserting that such information is not necessary until formal *Markman* Claim Construction. Presently, pursuant to the Court's Case Management Report, this is set to occur after May 24, 2017. (Dkt. No. 28.) Fujifilm's refusal to produce information and documents has denied USFRF and this Court the benefit of a fully developed record, including the parties' formal positions with respect to USFRF's U.S. Patent No. 6,630,937 ("the '937 Patent"). Fujifilm's Motion in effect, however, now seeks claim construction well in advance of the scheduled *Markman* hearing. Not only does the Motion

violate the Case Management Order, but it is also procedurally inappropriate. Claim construction is only warranted relative to a motion to dismiss when the Court has access to a fully developed record, including *Markman* briefing and expert declarations. The existence of a substantial number of material issues of fact also precludes a decision under FED. R. CIV. P. 12(b)(6) ("Rule 12(b)(6)"), or a conversion of Fujifilm's Motion into a motion for summary judgment under FED. R. CIV. P. 12(d) ("Rule 12(d)"). Therefore, Fujifilm's efforts to obtain early claim construction, and a ruling under 35 U.S.C. § 112 ¶ 6, prior to completed discovery and scheduled claim construction, must be denied as premature and procedurally deficient.

With respect to its substantive argument, Fujifilm's Motion similarly fails. First, Fujifilm's Motion lacks any analysis on *whether* 35 U.S.C. § 112 ¶ 6 even applies to the '937 Patent's claims. Fujifilm's Motion presumes § 112 ¶ 6 applies without first explaining why the '937 Patent's claims fall under § 112 ¶ 6. Second, to the extent 35 U.S.C. § 112 ¶ 6 applies, Fujifilm fails to recognize, let alone mention, that the '937 Patent must be viewed through the prism of a person of ordinary skill in the art. Fujifilm's Motion fails to define such a person of ordinary skill in the art. Instead, Fujifilm's Motion relies solely upon unsupported attorney argument which is insufficient to meet the requisite burden of identifying the appropriate software structure. Third, to the extent the Court reaches Fujifilm's analysis on the disclosure of the '937 Patent, there is sufficient hardware and software disclosure in the '937 Patent's specification and drawings to provide the requisite support for the challenged claim elements. At a minimum, as set forth herein, the '937 Patent contains sufficient structural support for its claims that Fujifilm cannot meet its lofty burden of clear and convincing evidence. Indeed, Fujifilm never mentions this standard nor indicates that its unsupported attorney arguments can satisfy

this burden. For at least these reasons, and as explained in further detail below, Fujifilm's Motion must be denied.

## II.     LEGAL STANDARD

A motion for judgment on the pleadings is reviewed using the same standards as a motion to dismiss under Rule 12(b)(6). *CWI, Inc. v. LDRV Holdings Corp.,* 2014 WL 12573016, at *8 (M.D. Fla., March 26, 2014). It is well-established that, "[t]o survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "When considering such a motion, the Court must accept the facts alleged . . . as true and draw all inferences that favor the nonmovant." *Szabo v. Fed. Ins. Co.,* 2011 WL 3875421, at *2 (M.D. Fla. Aug. 31, 2011). Claim construction is not appropriate in a motion to dismiss pursuant to Rule 12(b)(6). *Deston Therapeutics, LLC v. Trigen Labs, Inc.*, 723 F. Supp. 2d 665, 672 (D. Del. 2010).

To the extent that Defendant's Motion is treated as a motion for summary judgment pursuant to Rule 12(d), granting such a motion is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Making that determination, however, is improper where "a party is not provided a reasonable opportunity to discover information essential to [its] opposition."  *Smith v. Fla. Dep't of Corrs.*, 713 F.3d 1059, 1064 (11th Cir. 2013).

With regard to the specific issues presented in this case, all patents are "presumed valid." 35 U.S.C. § 282(a). This is based in part on the fact that the patent claims were allowed after a

thorough examination by trained and experienced Patent Office Examiners.[1] Invalidity of a

patent must be established by "clear and convincing" evidence, and the burden of proof is on the

party asserting invalidity. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011).

Furthermore, 35 U.S.C. § 112 ¶ 6 provides:

> An element in a claim for a combination may be expressed as a
> means or step for performing a specified function without the
> recital of structure, material, or acts in support thereof, and such
> claim shall be construed to cover the corresponding structure,
> material, or acts described in the specification and equivalents
> thereof.

The determination of "whether sufficient structure has in fact been disclosed to support a means-

plus-function limitation" under § 112 ¶ 6 is analyzed through the understanding of a person of

ordinary skill in the art. *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed.

Cir. 1999).

## III.   ARGUMENT

### A.   Fujifilm's Request for Early Claim Construction in Connection with its Motion is Procedurally Improper.

As Fujifilm indicates, its Motion under Rule 12(c) is the functional equivalent of a Rule

12(b)(6) motion to dismiss. The only distinction is that a Rule 12(c) motion may be filed after the

pleadings have closed and its responsive pleadings may be considered by this Court in ruling on

the 12(c) motion. (Dkt. No. 38, p. 6; *see also, CWI, Inc.,* 2014 WL 12573016, at *8.). However,

as part of its Motion, Fujifilm inappropriately requests that this Court undertake early claim

construction on the unfounded basis that some district courts have permitted early claim

construction in connection with motions for summary judgment. (Dkt. No. 38, p. 6.) Fujifilm

---

[1] During the prosecution of the application leading to the '937 Patent in the Patent Office, no comments or objections were made by the Examiner as to §112 ¶ 6 or relative to any lack of support for the claims – and such analysis is one of the Examiner's duties. *See, e.g., Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574 (Fed. Cir. 1992) and *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996).

draws an erroneous analogy between its Motion and a motion for summary judgment while failing to recognize the two are reviewed under entirely different standards. Fujifilm also ignores legal precedent deeming requests for claim construction in connection with a motion to dismiss as being improper. Therefore, Fujifilm's request for early claim construction in connection with its Motion must be denied.

"Claim construction is generally not appropriate on a motion to dismiss" and courts have denied motions to dismiss on this basis. *Deston Therapeutics,* 723 F. Supp. 2d at 672; *see also, Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, 2010 WL 4698576, at *5 (N.D. Ohio Nov. 12, 2010). "[C]onstruction should occur only after both parties have had the opportunity to propose their claim construction definitions and submit their claim construction briefs." Additionally, claim construction may require examination of the prosecution history and prior art references, as well as dictionaries and other types of extrinsic evidence. *Titanide Ventures, LLC v. Int'l Bus. Machines Corp.*, 2012 WL 5507327, at *3 (E.D. Tex. Oct. 8, 2012) (denying motion to dismiss that would require court to construe claim).[2]

*Internet Media Corp. v. Hearst Newspapers, LLC*, 2011 WL 2559556 (D. Del. June 28, 2011) is instructive of the issues here. In that case, the defendant sought to dismiss plaintiff's patent claim on the basis that the plaintiff presented a means-plus-function claim. Defendant specifically argued that the claim was invalid because the specification failed to disclose structure for the claim. *Id*. at *3. The Court recognized that determining whether or not structure was disclosed required claim construction and stated: "[w]hile the court may properly look at the

---

[2]  Fujifilm argues that "district courts routinely engage in claim construction outside of the formal claim construction process." (Dkt. No. 38, p. 8, citing *F & G Research, Inc. v. Google Inc.*, 2007 WL 2774031 (S.D. Fla. Sep. 21, 2007); *FO2GO LLC v. Adobe Sys. Inc.*, 2016 WL 747977 (D. Del. Feb. 24, 2016); and *Iris Connex, LLC v. Acer America Corp.*, 2016 WL 4596043 (E.D. Tex. Sep. 2, 2016)).  However, each of those cases was decided ***after*** the parties were given an opportunity to brief and/or argue their proposed claim constructions. None of the cases that Fujifilm cites were decided on the bare pleadings as Fujifilm requests in its present Motion. (Dkt. No. 38, p. 24.)

patent when granting [a] motion [to dismiss], [this] motion would require the court to construe said claims, *an action that is not appropriate in connection with a motion to dismiss.*" *Id.* (emphasis added). The court held that "[t]his is a task that is properly reserved for summary judgment wherein the court has the benefit of a properly developed record." *Id.*

Here, Fujifilm similarly attempts to improperly obtain early claim construction in connection with its Motion simply by asserting the specification fails to disclose a structure or algorithm. As discussed in detail below, this assertion is facially erroneous. In any event, as set forth above, requesting claim construction in connection with its Motion is procedurally improper and should instead be determined when this Court has the benefit of a fully developed record. Indeed, Fujifilm's request for early claim construction is contrary to its prior positions asserted in sworn responses to discovery requests which have prevented a full record. Therefore, Fujifilm's Motion must be denied on a procedural basis.

**B.     Fujifilm's Motion Cannot Be Converted into a Motion for Summary Judgment.**

Fujifilm improperly contends that to the extent the Court needs papers or documents beyond USFRF's Complaint, it consents to its Motion being converted into a motion for summary judgment. (Dkt. No. 38, p. 7, fn. 2.) Fujifilm ignores authority that states that a court will only consider conversion of a Rule 12(b)(6) or 12(c) motion into a motion for summary judgment, "if the record is fully developed." *Jozwiak v. Stryker Corp*., 2010 WL 743834, at *4 (M.D. Fla. February 26, 2010); *see also*, *StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc*., 2015 WL 518852, at *2 (M.D. Fla. February 9, 2015). In *Jozwiak*, the court deemed such a motion "premature" and refused to convert the motion under 12(d) to a motion for summary judgment because "discovery [was] still ongoing and the record thus [was] not 'fully developed.'" *Id.* at *4. As discussed above, no such fully developed record exists in this matter, and discovery has

just started. Thus, Fujifilm's Motion is not ripe for consideration under summary judgment standards.

### C.        Resolving § 112 ¶ 6 Issues Requires Analysis Beyond Claim Construction

The resolution of § 112 ¶ 6 patent claims require the Court to determine not only the meaning of the language of the claims, as is done in traditional claim construction, but also the structural support in the specification of the patent that corresponds to a given means-plus-function limitation. *Atmel*, 198 F.3d at 1379.

The issue of determining support for the various means-plus-function terms in the claims will require Court review, from the standpoint of a person of ordinary skill in the art ("POSA"),[3] the specification and drawings in an attempt to determine if there is support for each of the terms or its equivalent, and if so, what is the support or its equivalent. *Atmel*, 198 F.3d at 1379. The Court will have to put itself in the position of a person of ordinary skill in the art – which is currently unresolved with no proposed definition set forth in Fujifilm's Motion. On this basis, the Court must make a thorough review and analysis of the claims and patent specification to determine whether there is a factual structural support for each of the means-plus-function features Fujifilm selected, and if so, what is it and what are its equivalents. *Id*. Fujifilm also wants this to be accomplished based on its counsel's one-sided view of the terms and support, and without providing any expert report or analysis. In fact, Fujifilm does not mention, let alone follow, the legal standards requiring the determination of supporting structure in the specification to be viewed from the point of view of a person of ordinary skill in the art.

This analysis is to be conducted in addition to claim construction, which is a procedure involving the full input of both parties advising the Court of the meaning of each term. During claim construction, the Court is required to consider all of the intrinsic evidence including the

---

[3] A person of ordinary skill in the art is often referred to by the term "POSA," which is sometimes used herein.

patent, file history and the prior art references, and can also take into account extrinsic evidence, such as dictionary definitions and expert assistance on the technology. *See Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); see also *Phillips v. AWH Corp.*, 415 F.3d 1303, 1310 (Fed. Cir. 2005) (*en banc*). In this manner, the Court has a fully developed record on which to make its decisions since the issues are fully briefed by both parties.

Whether the Court views Fujifilm's Motion under Rule 12(c) or Rule 12(b)(6), there also are numerous questions of fact which need to be decided prior to a ruling – even though the ultimate question under 35 U.S.C. § 112 ¶ 6 may be a question of law.[4] And as indicated above, it would be unfair to rule on these issues without a full record and a full presentation by both parties, without the benefit of discovery. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1579 (Fed. Cir. 1989). ("A genuine evidentiary conflict created by the underlying probative evidence pertinent to the claim's interpretation" may give rise to a disputed issue of fact.)

### 1.    Person of Ordinary Skill in the Art

One of the material questions of fact is the determination of the levels of education and experience that a POSA must have in order to review the technical questions involved in this case. Fujifilm fails to set forth any proposals on the requisite level of skill through which the Court must view the '937 Patent. Indeed, Fujifilm's Motion failed to mentions or refers to a person of ordinary skill in the art, instead relying entirely upon attorney argument. Questions remain as to what is the level of qualifications, i.e., education and experience, of such a POSA,

---

[4] The fact that there are underlying issues of fact relative to issues of law occurs in many areas of patent law. For example, the issue of obviousness under 35 U.S.C. §103(a) is ultimately a question of law, but has several underlying questions of fact, such as the scope of the prior art, the differences of the claimed invention from the prior art, and the qualifications of persons skilled in the art. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068 (Fed. Cir. 2012). Virtually all of these questions are only decided after discovery and claim construction are completed, both sides have filed arguments, and the Court has a full record on which to review and render its decision. The number of issues of material fact also precludes any type of summary judgment relative to the issues involved in Fujifilm's Motion.

and how the disclosure of the '937 Patent is viewed through the prism of a POSA, given their knowledge and expertise. This is particularly relevant in the context of 35 U.S.C. § 112 ¶ 6.

> That the 'one skilled in the art' analysis should apply in determining whether sufficient structure has been disclosed to support a means-plus-function limitation flows naturally from the relationship between claim construction and § 112, ¶ 2. We have previously observed that an analysis under § 112, ¶ 2 is inextricably intertwined with claim construction, and that in the § 112, ¶ 6 context, a court's determination of the structure that corresponds to a particular means-plus function limitation is indeed a matter of claim construction. As it is well-established that claims are to be construed in view of the understanding of one skilled in the art, the closely related issue concerning whether sufficient structure has in fact been disclosed to support a means-plus-function limitation should be analyzed under the same standard.

*Atmel Corp.*, 198 F.3d at 1379 (internal citations omitted); see also *Intel Corp. v. VIA Techs.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003) (knowledge of a person of ordinary skill in the art can be used to make clear how to implement a disclosed algorithm). Here the two principal inventors, Dr. Maria Kallergi and Dr. Larry Clarke, are both Ph.D's with advanced technical degrees and numerous years of experience in the field. It is thus likely that the POSA in this case would necessarily be an individual possessing a high level of technical skill and experience in the relevant field.

Because a POSA remains undefined, and since the full and complete disclosure of the '937 Patent cannot be determined at this time, a material question of fact remains unresolved in Fujifilm's Motion.

### 2. Fujifilm Fails to Specify Whether § 112 ¶ 6 Applies to the '937 Patent

Another material question of fact is whether § 112 ¶ 6 applies in the first place. Prior to analyzing *whether* the '937 Patent claims have sufficient support in the specification so as to comply with 35 U.S.C. § 112 ¶ 6, Fujifilm must first establish that § 112 ¶ 6 *applies* to the

disputed '937 Patent claim terms. Fujifilm's Motion glosses over this material fact determination. It is true that the "[u]se of word 'means' in claim language creates a presumption that § 112 ¶ 6 applies." *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259 (Fed. Cir. 2008). However, "[i]f, in addition to the word 'means' and the functional language, the claim recites sufficient software structure for performing the described functions in their entirety, the presumption of § 112 ¶ 6 is overcome and *the limitation is not a means-plus-function limitation*." *Id.* There also is a presumption that if the claims do not contain the term "means," the claims are not governed by § 112 ¶ 6. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015).

Fujifilm makes no attempt to answer this initial question of whether claims of the '937 Patent are of a type where § 112 ¶ 6 is applicable. *See Advanced Ground Info. Sys.*, 830 F.3d at 1347. "To determine if the claim recites satisfactory structure, 'it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function.'" *TecSec, Inc. v. Int'l Bus. Machines Corp.*, 731 F.3d 1336, 1347 (Fed. Cir. 2013) (quoting *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359–60 (Fed. Cir. 2004)). As discussed below, the specification, as well as the claims themselves are replete with structural support sufficient to satisfy § 112 ¶ 6. Fujifilm's failure to establish the applicability of § 112 ¶ 6 in the first place is fatal to its Motion prior to reaching the next stage of the analysis.

### D.    Adequate Support in the '937 Patent's Specification Belies Fujifilm's Motion

Fujifilm's position that there is "no corresponding structure" disclosed in the '937 patent for any of the alleged "means-plus-function" elements is wholly unsupported. Contrary to

Fujifilm's assertions, and to the extent § 112 ¶ 6 applies, the '937 Patent provides full structural support for all of its claims.

As to the type of the support, there is no definitive form required to satisfy a § 112 ¶ 6 term, particularly with respect to describing software structure or an algorithm. The law is clear: it can be a mathematical formula, simple prose language, a flow chart, "a series of steps either in the drawings or written specification, or any other manner that provides sufficient structure." *Function Media, LLC v. Google, Inc.,* 708 F.3d 1310, 1318 (Fed. Cir. 2013). The structure also can be found in bits and pieces from a combination of several or all of these items (e.g., a drawing figure together with a description in the written specification). The key issue is whether a person of ordinary skill in the art, reviewing the patent disclosure (specification, claims and drawings) would understand that the disclosure encompasses the structure (hardware or software) required to perform the claimed function. *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519-20 (Fed. Cir. 2013).

As indicated, above, the determination of whether a means-plus-function claim element finds support in the patent disclosure is viewed from the perspective of a POSA. *Linq Indus. Fabrics, Inc. v. Intertape Polymer Corp.*, 2005 WL 6270269, at *25 (M.D. Fla. Sep. 27, 2005), *report and recommendation adopted*, 2005 WL 6259384 (M.D. Fla. Nov. 23, 2005).

Despite Fujifilm's unsupported assertions to the contrary, the disclosure of the '937 Patent provides ample corresponding structure to support every element of every claim as it clearly and adequately informs a POSA of corresponding structure. This is true whether the structure is a physical structure (e.g., a monitor) or a software structure (e.g., steps in preforming a task). Thus, each element is supported in the specification and is not indefinite.

Specifically, Fujifilm calls-out three elements of Claim 1, which it asserts invoke 35

U.S.C. § 112, ¶ 6 and which it erroneously claims are not supported by the '937 Patent

disclosure. Those elements are:

> First, the "means for transforming" element performs the function of: transforming digitized mammogram data into a plurality of varying-resolution forms, each form having different grayscale values.
>
> Second, the "means for communicating" element performs the function of: communicating with a monitor to display the plurality of forms, each form within a different window on the monitor, and each form having a predetermined illumination state corresponding to the greyscale values of the form.
>
> Third, the "means for receiving . . . and for transforming" element performs the functions of: (1) receiving, from a user communication means, a control instruction for changing an illumination state in a displayed form, and (2) implementing the control instruction upon the displayed form.

(Dkt. No. 38, p. 11.)

Fujifilm makes similarly flawed arguments regarding three elements of Claim 3 and

Claim 17, including the claim elements: "means for receiving a signal from a user-operable

device;" "means controllable by a signal from the user-operable device for transforming the

image into a plurality of varying-resolution forms, each form having a different set of greyscale

values;" and "means for displaying the forms on the display means, each form displayed within a

different sector of the display means." (Dkt. No. 38, pp. 14-16.) Fujifilm also argues that that the

terms "processor" and "input device," as recited in Claim 2, are similarly unsupported means-

plus-function elements (Dkt. No. 38, p. 18), even though the term "means" is not found in that

claim.

In the event that this Court first finds these elements invoke § 112, ¶ 6, an analysis of the

'937 Patent disclosure shows that each of the cited elements is supported by ample disclosures

and sufficient to apprise persons of ordinary skill of specific structure for performing the claimed functions.

For example, as to Claim 1:

a) "means for transforming the digitized mammogram data into a plurality of varying-resolution forms each having different grayscale values" is supported at least by the following disclosures in the '937 Patent: Figure 3, particularly Blocks 304-306; Figure 4, particularly windows 41-44; Col. 4, lines 27-35; and Col. 4, line 64 to Col. 5, line 23. Figure 3 describes an algorithm which sets forth a sequence of steps executed by a processor in preferred embodiments of the invention. Figure 4, as well as the other Figures in the '937 Patent, illustrate various features of the invention, including those which provide structural support for various claim elements.

b) "means for communicating with a monitor to display the plurality of forms, each form within a different window on the monitor, and each form having a predetermined illumination state corresponding to the grayscale values thereof" is supported at least by the following disclosures in the '937 Patent: Figures 1-3, particularly Blocks 302-308 in Figure 3; Col. 4, lines 18-21; and Col. 5, lines 2-13 and 23-25. In general, the user (typically a radiologist) uses a mouse, keyboard or other equivalent user input device, to load and display various mammogram images on one or two monitors, with each displayed image having a certain illumination and grayscale values.

c) "means for receiving from the user communication" refers to a control instruction for changing an illumination state in a displayed form, and is supported at least by the following disclosures in the '937 Patent: the mouse 18 in Figure 2; the Buttons 404-406 in Figure 4; Button 402 in Figure 5; Col. 4, line 66 to Col. 5, line 2; and Col. 5, lines 39-51. The user sends signals to

13

the processor by selecting items on the monitor with a mouse or the like, the items including Button 402 (as best shown in Figure 5) and adjustment Buttons 404-406 (as shown in Figure 4).

d) "means for implementing the control instruction upon the displayed form, thereby permitting the user to control the illumination state of each displayed form" is supported at least in part by the following disclosures in the '937 Patent: grayscale adjustment Buttons 404-405 and gamma adjustment Button 406 in Figure 4, and Col. 5, lines 39-51; and image manipulation software routines included in the XIL Imaging Library, and Col. 4, lines 28-32.

As to Claim 3:

a) "means for receiving a signal from a user-operable device," is supported at least by the following disclosure in the '937 Patent: an "I/O" Block in Figure 1; a mouse and keyboard in Figure 2; Buttons 404-406 in Figure 4; Button 402 in Figure 5; Col. 4, line 64 to Col. 5, line 2; and Col. 5, lines 29-32 and 39-44.

b) "means controllable by a signal from the user-operable device for transforming the image into a plurality of varying-resolution forms, each form having a different set of grayscale values" is supported at least by the following disclosure in the '937 Patent: the "I/O" Block in Figure 1; a mouse and keyboard in Figure 2; Buttons 404-406 in Figure 4; Col. 4, line 64 to Col. 5, line 2, and Col. 5, lines 29-32 and 39-47.

c) "means for displaying the forms on the display means, each form displayed within a different section of the display means" is supported at least by the following disclosure in the '937 Patent: Figure 1 and 2; Blocks 301-308, 310, 313 in Figure 3; Col. 4, lines 18-21 and 28-35; and Col. 5, lines 2-28.

As to Claim 17:

a) "means for receiving a signal from a user-operable device" is substantially the same as

item (a) in Claim 3 above and is supported at least by the same disclosure in the '937 Patent.

b) "means controllable by a signal from the user-operable device for transforming the image into a plurality of varying-resolution forms, each form having a different set of grayscale values" is substantially the same as item (b) in Claim 3 above and is supported at least by the same disclosure in the '937 Patent.

c) "means for displaying a first form on the first monitor and a second form on the second monitor" is supported at least by the following disclosure in the '937 Patent: Figures 1 and 2; Blocks 302-303 in Figure 3; Col. 4, lines 18-26 and 60-62; and Col. 5, lines 2-13.

In summary, each of the claim elements is supported by ample disclosures in the specification and drawings of the '937 Patent sufficient to apprise a person of ordinary skill of specific structure for performing the claimed function. For example, the claimed "means for receiving a signal from a user-operable device" is supported by specific structure as disclosed in at least the following sections of the patent: FIGS. 1 and 2; and Col. 4, line 64 – Col. 5, line 2. Also, the claimed "means controllable by a signal from the user-operable device for transforming the image into a plurality of varying-resolution forms, each form having a different set of greyscale values," and "means for displaying the forms on the display means, each form displayed within a different sector of the display means" are supported by at least the following sections of the '937 Patent: FIG. 3 – Blocks 304-308; FIG. 4 – views/windows 41-44; Col. 4, lines 27-35, Col. 4, line 64 – Col. 5, line 51. More specifically, the disclosure of the '937 Patent provides for a specific set of hardware and software components, which together comprise an enabling embodiment to perform the claimed functions. Those hardware and software components include the UltraSPARC 2200 computer, running the Solaris 2.5.1 operating system, with application software using "the Motif toolkit" and "Sun's X Imaging Library (XIL)," which

was "accelerated for both the UltraSPARC's Fast Frame Buffer (FFB) as well as Dome's MD5 boards." (Col. 4, lines 31-21.)

Regarding Fujifilm's erroneous assertion that the terms "processor" and "input device" as recited in Claim 2 are unsupported means-plus-function elements (Dkt. No. 38, p. 18), and again to the extent the Court finds that these elements invoke § 112, ¶ 6, both of the terms "processor" and "input device" are clearly supported by the disclosure of the '937 Patent to apprise a person of ordinary skill of specific structure, including at least the following sections of the '937 patent: FIGS. 1 and 2, item 18; Col. 3, lines 45-48; Col. 4, line 64 – Col. 5, line 2.

## IV.    CONCLUSION

For the reasons stated above, Fujifilm's Motion for a Judgment on the Pleadings must be denied and it cannot be converted into a Motion for Summary Judgment. Furthermore, this Court should permit the parties to complete discovery and fully participate in claim construction as scheduled by this Court's Case Management Report, so that this Court may benefit from a fully developed record.

Dated: December 22, 2016           Respectfully Submitted,

s/Franklin M. Smith
John A. Artz (Admitted *Pro Hac Vice*)
Michigan Bar No: P24679
Franklin M. Smith (*Admitted Pro Hac Vice*)
Michigan Bar No: P76987
DICKINSON WRIGHT PLLC
2600 W. Big Beaver Rd., Suite 300
Troy, Michigan 48084
(248) 433-7200
(248) 433-7274 - Fax
jartzsr@dickinsonwright.com
fsmith@dickinsonwright.com

John K. Harrop (Admitted Pro Hac Vice)
Virginia Bar No: 38548
P.O. Box 320171
Alexandria, VA 22320
Telephone: (202) 230-6480
harrop@vapatent.com

Gregory A. Hearing
Florida Bar No: 817790
THOMPSON, SIZEMORE, GONZALEZ &
HEARING, P.A.
201 N. Franklin Street, Suite 1600
Tampa, FL 33602
(813) 273-0050
(813) 273-0072 - Fax
ghearing@tsghlaw.com

*COUNSEL FOR PLAINTIFF/COUNTERCLAIM
DEFENDANT*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on December 22, 2016 via the Court's ECF system.

s/ Franklin M. Smith